UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LEANDRO BOADA PUERTA,

      Petitioner,

   v.

FIELD OFFICE DIRECTO
GARRETT J. RIPA,  WARDEN
FLORIDA SOUTH SIDE
DETENTION CENTER,  UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,
DAREN K MARGOLIN,
SECRETARY KRISTI NOEM,
PAMELA J. BONDI, ACTING
DIRECTOR TODD M. LYONS,

      Respondents,

Case No. 2:26-cv-724-KCD-DNF

## <u>ORDER</u>

Petitioner Leandro Boada Puerta has filed a Motion to Reconsider. (Doc. 7.)[1] He asks this Court to vacate its prior order denying his habeas corpus petition. He argues that the Court misapprehended a critical fact: when he was released by immigration authorities at the border in 2021, he was not granted formal "parole," but rather was released on an "Order of Recognizance." Because of this paperwork distinction, Puerta insists he is not

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

an alien seeking admission under 8 U.S.C. § 1225, but is instead subject to the bond-eligible framework of 8 U.S.C. § 1226.

Puerta seeks relief under Federal Rule of Civil Procedure 59(e). (Doc. 7 at 1-2.) That path is an exceptionally narrow one. It is reserved for correcting clear errors or preventing manifest injustice. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). It is not a vehicle to relitigate old arguments or to advance novel theories that could have been raised earlier. "Simply put, [a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Hughes v. Stryker Sales Corp.*, No. CIV.A.08-0655-WS-N, 2010 WL 2608957, at *2 (S.D. Ala. June 28, 2010). As explained below, because the Court's original order faithfully applied the applicable statutory framework, there is no manifest error to correct.

By way of overview, this dispute concerns two statutory provisions—8 U.S.C. §§ 1225 and 1226. As relevant here, § 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings. *Id.* An applicant for admission is "[a]n alien present in the United States who has not been admitted or who arrives in the United

States (whether or not at a designated port of arrival)[.]" *Id.* § 1225(a)(1). Admission means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Putting all this together, § 1225 provides for mandatory detention of an alien who arrives in the United States, has not been admitted, and is not clearly and beyond a doubt entitled to be admitted.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings v. Rodriguez,* 583 U.S. 281, 189 (2018) (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings,* 583 U.S. at 306.

Back to the facts here. Puerta illegally entered the country and presented himself to border patrol for inspection. (Doc. 1, Ex. 2.) He was detained, determined not admissible, and released into the United States pending removal. (*Id.,* Ex. 3.) These undisputed facts place him squarely

3

under § 1225. *See Jennings*, 583 U.S. at 287 ("[A]n alien who arrives in the United States . . . but has not been admitted, is treated as an applicant for admission."); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien who tries to enter the country illegally is treated as an applicant for admission . . . and an alien who is detained shortly after unlawful entry cannot be said to have effected an entry.").

As noted, applicants for admission who are inadmissible must be detained pending removal proceedings. *Jennings*, 583 U.S. at 297. The Government has only one alternative under this framework—it can temporarily release the noncitizen on parole. *Id.* at 288. But make no mistake, this is not a lawful entry. A paroled noncitizen has not been admitted to the country. Instead, the law treats them as if they never crossed the threshold. When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Puerta may have physically spent time in the interior of the United States after his release, the law places him exactly where he started—at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be

4

detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Puerta disagrees with this classification. He points to his release paperwork from the border. Because the immigration officer released him on his own recognizance rather than officially designating him as paroled, Puerta claims that § 1225 no longer governs his case, dropping him instead into the bond-eligible world of § 1226. (*See* Doc. 7 at 2-3.) An order of recognizance, he contends, is a specific custodial release determination, not an admission or a grant of parole under the Immigration and Nationality Act ("INA").

This argument flouts the statutory framework. When an inadmissible alien arrives at the border and seeks admission, like here, § 1225 gives the Government exactly two choices. Option one: mandatory detention. Option two: temporary release "on parole." *Jennings*, 583 U.S. at 288. There is no option three. Congress did not write a "release on recognizance" exception into the statute.

So what happens when an immigration officer goes off-script and issues an order of recognizance anyway? Puerta assumes he reaps the windfall of that administrative error. He does not. An executive branch official cannot

5

bestow a legal status that Congress has expressly withheld. A noncitizen's substantive rights are governed by the laws Congress enacts, not by the paperwork an agent happens to print out at the border. *See I.N.S. v. Pangilinan*, 486 U.S. 875, 883-85 (1988); *Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1318 (11th Cir. 2006). When Puerta arrived at the border, he was an applicant for admission. His release under a false administrative narrative cannot change that foundational fact. To hold otherwise would mean that a single immigration officer could rewrite the INA with a slip of the pen, dismantling a clear congressional mandate. Because parole is the only legal mechanism Congress provided to release an applicant for admission, the law must treat Puerta's temporary release as exactly that—a parole. *See Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *6 (S.D.N.Y. Dec. 15, 2025) ("Whatever 'grace' Congress and the Executive Branch have thus far bestowed upon Petitioner, including not only his initial parole but also his examination by an immigration officer under Section 1225(b)(2)(A) itself, bestows no additional rights.").

Puerta also makes much of his physical presence in the interior of the country over the last few years, arguing he "had already entered the United States" and was no longer "seeking admission." But the law operates on a legal fiction here. When a noncitizen with no right to enter is stopped at the border and temporarily released into the country, they remain, legally

speaking, at the border. *See Thuraissigiam*, 591 U.S. at 139 ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border."). Their subsequent arrest years later does not magically alter the nature of their initial arrival or the legal consequences that follow.

Puerta remains an applicant for admission under § 1225. That statute mandates his detention and says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. Accordingly, his Motion for Reconsideration (Doc. 7) is **DENIED**.

**ORDERED** in Fort Myers, Florida on April 7, 2026.

Kyle C. Dudek
United States District Judge

7